**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL BURKE, on behalf of himself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| FORD MOTOR COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Michael Burke, individually and on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Ford Motor Company ("Ford" or "Defendant"):

**INTRODUCTION**

1.      This is a class action, brought under federal and New York law, on behalf of a proposed nationwide class and statewide subclass of consumers who purchased or leased one or more of the following vehicles designed and manufactured by Defendant Ford and equipped with a 360-Degree Camera system:  a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair (the "Affected Vehicles").

2.      The bases for the class claims are set forth in greater detail herein, but arise from Ford's unlawful conduct with respect to the defective design and/or manufacture of the Affected Vehicles, as well as Ford's deceptive and misleading marketing, advertising, and sale or lease of the Affected Vehicles to Plaintiff and the classes.

3.      Specifically, Ford designed, manufactured, marketed, advertised, and sold or leased the Affected Vehicles to Plaintiff and the classes with a defective 360-Degree Camera system (the "Defective Camera"), which routinely and systematically "glitches" or malfunctions

1

while the Affected Vehicles are operating in reverse, resulting in a total loss of the rear camera image and displaying instead a blank screen or blue or black image. This defect leaves the vehicle operator with no operational rear-view camera, and renders the 360-Degree Camera feature – an upgraded option for which Plaintiff and the classes paid extra – effectively useless while reversing. See photograph of the Defective Camera in Plaintiff's Affected Vehicle displaying a blue screen instead of the actual rear-view image, at **Figure 1** below:

<u>**Figure 1**</u>



4.      Ford knew, or should have known, about the Defective Cameras long before it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiff and the classes, yet it never informed Plaintiff and the classes about the Defective Cameras in the Affected Vehicles.

5.      The National Highway Traffic Safety Administration ("NHTSA") requires that all new vehicles in the United States manufactured since May 2018, including each of the Affected Vehicles, be equipped with a rear-view camera.  The non-functioning Defective Cameras render the Affected Vehicles purchased or leased by Plaintiff and the class members noncompliant with these federal mandates.

6.       Moreover, a non-functioning rear-view camera system, such as those installed in the Affected Vehicles purchased or leased by Plaintiff and the class, increases the risk that a vehicle will be involved in a crash while operating in reverse, potentially causing injury or even death to the vehicle's occupants, the occupants of other vehicles, and/or pedestrians.

7.      Even Ford recognizes – and indeed has repeatedly conceded – that **"[t]he loss of the rear camera image during a reverse action increases the risk of a crash."**  See, e.g., Attachment A, 11/20/21 Memorandum from Ford to Dealers regarding Safety Recall 21S44.  Yet Plaintiff and the class suffer the loss of their rear camera functionality on a regular basis, and are forced to operate their vehicles despite such loss.

8.      Further, in most instances, Plaintiff and the class paid extra for the defective 360-Degree Camera system, which is an upgraded feature in the Affected Vehicles over a standard rear-view camera.  Yet the very feature for which Plaintiff and the class paid extra is defective and, in many cases, non-functioning.

9.      The rear-view camera system on vehicles that are just three years old or newer should not systematically fail on a regular basis.

10.     Moreover, the Defective Cameras in the Affected Vehicles are covered by Ford's manufacturer's warranty, and therefore are entitled to be repaired or replaced by Ford under such warranty.

11.      Despite this, Defendant Ford and its authorized dealerships have refused and/or failed to adequately repair or replace the Defective Cameras in the Affected Vehicles.

12.      Indeed, Ford has issued no fewer than three recalls relating to the Defective Cameras, yet the defect persists in the Affected Vehicles.  Ford has recently informed purchasers and lessees of the Affected Vehicles, including Plaintiff and the class, that although it is "**working on a service fix,**" no such **"fix"** is currently available.  See Attachment F, 4/23 Correspondence from Defendant to Plaintiff regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

13.      In the meantime, Plaintiff and the class are forced to continue to drive their new or newer Affected Vehicles with non-functioning rear-view cameras, placing themselves, their families, and others at an increased risk of a crash and bodily harm.

14.      As alleged in greater detail herein, Ford's design, manufacture, and installation of the Defective Cameras in the Affected Vehicles, and its subsequent marketing, advertising, and sale or lease of such vehicles to Plaintiff and the class without informing Plaintiff and the class of the Defective Cameras' inherent defects, is a deceptive act or practice and constitutes false advertising in violation of New York General Business Law §§ 349 and 350, and further violates New York common law as set forth herein.  Moreover, Ford's sale and lease of the Affected Vehicles containing the Defective Cameras, and its failure to repair said Defective Cameras after such sale and lease, is a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. as well as common law and equitable principles.

15.      This action seeks redress for Plaintiff and the class in the form of compensatory, consequential, statutory, and/or treble damages under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., New York General Business Law §§ 349 and 350, common law, and

equity, as well as injunctive relief, which would include, <u>inter alia</u>, an order directing Ford to cease the unlawful practices challenged herein, specifically the manufacture, installation, marketing, advertising, and sale or lease of the Defective Cameras in the Affected Vehicles, and to initiate a program to provide refunds, repairs, and/or restitution to Plaintiff and the class.

## THE PARTIES

16.    Plaintiff Michael Burke is an individual and citizen of New York and a member of the proposed classes of nationwide and New York consumers who purchased or leased from Defendant Ford one or more Affected Vehicles with Defective Cameras within the class period.

17.    Defendant Ford Motor Company is a for-profit corporation organized and existing under the laws of Delaware, with its principal place of business located at One American Road, Dearborn, Michigan 48126; and thus is a citizen of Delaware and Michigan.

## JURISDICTION AND VENUE

18.    Federal jurisdiction over this matter is proper under the Class Action Fairness Act in that this is a proposed class action, Defendant is a citizen of a different state than the Plaintiff and members of the proposed class, and the total amount in controversy exceeds $5 million.

19.    This Court has personal jurisdiction over Defendant because: (a) Defendant is authorized to do business, and in fact continuously and systematically conducts business, in the State of New York; (b) Defendant continuously and systematically markets, advertises, sells, and leases its Ford and Lincoln vehicles to New York consumers, including Plaintiff and the New York subclass, in New York; (c) the claims and injuries alleged herein took place in New York, in that Plaintiff and the New York subclass purchased or leased their vehicles in New York from Defendant's authorized dealerships in New York, and have suffered damages including the loss

of their Defective Cameras in New York; and (d) Defendant has committed tortious acts within New York (as alleged, without limitation, throughout this Complaint).

20.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Western District of New York, in that Plaintiff is a resident of this District, purchased an Affected Vehicle from Defendant's authorized dealership located in this District, and suffered injury in this District.

## FACTUAL ALLEGATIONS

21.     Defendant Ford is the designer, manufacturer, marketer, advertiser, and seller or lessor of Ford and Lincoln vehicles, including the Affected Vehicles at issue in this lawsuit: the 2020-2023 Ford Explorer, the 2020-2023 Lincoln Aviator, and the 2020-2022 Lincoln Corsair.

22.     Specifically, Ford designed and manufactured the Affected Vehicles and their component parts, including the defective 360-Degree Camera systems described herein.  Ford further developed, approved, and mandated the specifications of the Defective Cameras, as well as the practices and procedures for installing the Defective Cameras in the Affected Vehicles, and in fact installed the Defective Cameras in the Affected Vehicles.

23.     Additionally, Ford was and is responsible for designing, creating, and disseminating the advertising, marketing, and promotional materials relating to the Affected Vehicles and their component parts, including the Defective Cameras, as well as the owners' manuals and warranty booklets for said vehicles and components.

24.     Ford sold and leased, and continues to sell and lease, the Affected Vehicles to consumers via its dealerships in New York and throughout the United States, and it authorizes such dealerships to service and repair said vehicles.

25.    Ford also issues a manufacturer's warranty for the vehicles it sells and leases, including the Affected Vehicles, and it authorizes its dealerships to perform necessary services, repairs, replacements, and software updates to and for such vehicles under such warranty.

26.    Specifically, Ford provides a **"New Vehicle Limited Warranty"** for every vehicle it sells or leases, including the Affected Vehicles, which provides, inter alia, 4-year/50,000-mile **"bumper-to-bumper"** coverage of **"all parts on the vehicle that require repair, replacement or adjustment as a result of a manufacturing defect in factory-supplied materials or factory workmanship."**[1]  Under the warranty, Ford is required to **"repair"** or **"replace"** any and all defective parts on the Affected Vehicles within the specified coverage period, including the Defective Cameras at issue in this lawsuit.

27.    The Affected Vehicles – 2020-2023 Ford Explorers, 2020-2023 Lincoln Aviators, and 2020-2022 Lincoln Corsairs – are all midsize sport-utility vehicles ("SUVs").

28.    All Affected Vehicles, at minimum, come standard with a rear-view camera.

29.    Indeed, the NHTSA requires that all new vehicles manufactured after May 2018, including the Affected Vehicles, be equipped with a rear-view camera.

30.    The purpose of this federal requirement is to reduce the number of injuries and deaths from crashes while operating vehicles in reverse, particularly with respect to children, who are at a higher risk of suffering injury or death in a backing crash.

31.    In an effort to increase safety and convenience, Ford offers an optional, upgraded 360-Degree Camera system on certain of its vehicles, specifically including the Affected Vehicles.

---

[1] The 4-year/50,000-mile coverage applies only to the Lincoln Aviator and Lincoln Corsair.  The Ford Explorer has a slightly shorter coverage period of 3 years or 36,000 miles.

32.     The 360-Degree Camera system is available as an additional upgrade, at an additional cost, or as part of certain premium, more expensive packages on the Affected Vehicles.

33.     The 360-Degree Camera system is intended to permit the operator of an Affected Vehicle not only to see behind the vehicle – as with a rear-view camera – but also on the front and sides of the vehicle (i.e., 360 degrees around the vehicle).

34.     Indeed, Ford extolls the benefits of its 360-Degree Camera system as an additional selling point and an added safety and convenience feature of the Affected Vehicles.

35.     For example, with respect to the Lincoln Aviator purchased by Plaintiff, Ford states:

**AVAILABLE 360-DEGREE CAMERA**

**Get a bird's-eye view on keeping you confident behind the wheel. A series of cameras captures your surroundings and merges the scenes to give you a 360-degree view of the areas surrounding the vehicle.**[2]

36.     With respect to the Lincoln Corsair Purchased by Plaintiff, Ford advertises:

**360-DEGREE CAMERA**

**A clear vision created through a holistic view. Expand your sight with a series of built-in cameras that provide a bird's-eye view around the vehicle. The available 360-Degree Camera system also offers a front or rear view, and a front/rear split view showing what is in front of or behind the vehicle along with views showing cross traffic. All the views are accessed with a simple press of a button for enhanced awareness to make sure that most maneuvers are free of obstacles.**[3]

37.     Certain of Defendant's customers, including Plaintiff and the class, are willing to – and in fact did – pay extra for the 360-Degree Camera system and its features, which were

---

[2] See https://www.lincoln.com/luxury-suvs/aviator/features/technology/?intcmp=vhp-featcta-technology (last accessed 12/01/23).

[3] See https://www.lincoln.com/luxury-suvs/corsair/features/technology/?intcmp=performance-featcta-technology (last accessed 12/01/23).

expected to provide an added level of safety and security not only to the customer, but also to their passengers, to other drivers and their passengers, and to pedestrians; at least when the 360-Degree Camera system functions as it is designed and was advertised to do.

38.     Unfortunately, the 360-Degree Camera systems in the Affected Vehicles do <u>not</u> function as designed and advertised, or as promised by Ford when the Affected Vehicles were marketed, advertised, and sold or leased to Plaintiff and the class.

39.     Rather, the defective 360-Degree Camera systems on the Affected Vehicles routinely and regularly fail, resulting in a total loss of the rear camera image and displaying instead a blank screen or a blue or black image.  This defect leaves the vehicle operator with no rear-view camera and renders the 360-Degree Camera feature useless, increasing the likelihood of a crash and the risk of harm not only to the driver and passengers of the Affected Vehicles, but also to other drivers and their passengers as well as pedestrians.  See **Figure 1**, supra.

40.     Ford was aware, or should have been aware, of the Defective Cameras at the design and testing stage, long before the Affected Vehicles were manufactured, marketed, and sold or leased to Plaintiff and the class.  At the very latest, Ford was in fact aware of the Defective Cameras by mid-2020, as there were multiple complaints to NHTSA about the Defective Cameras in the Affected Vehicles by that time.

41.     These complaints, <u>inter alia</u>, reported blank, blue, or black screens in the Affected Vehicles while reversing, and/or non-functioning 360-Degree Camera systems.

42.     In or around March 2021, Ford opened a formal investigation concerning the Defective Cameras in the Affected Vehicles.  At that point, 359 warranty claims had been made relating to Defective Cameras in the Affected Vehicles.  See Attachment D, 9/23/21 Part 573 Safety Recall Report 21V-735.

43.     By August 2021, the number of Defective Camera warranty claims for the Affected Vehicles had increased to 1,867, with higher failure rates in Affected Vehicles that were more than 18 months old.  See id.

44.     By September 15, 2021, Ford was aware of two reported crashes involving the Affected Vehicles that were caused by or related to the Defective Cameras.  See id.

45.     On September 23, 2021, Ford issued the first of its three recalls regarding the Defective Cameras in the Affected Vehicles.  Safety Recall 21S44 covered 2020-2021 Ford Explorers, Lincoln Aviators, and Lincoln Corsairs with 360-Degree Camera systems.  The first recall acknowledged that **"an issue"** with the cameras **"may cause"** the video feed from **"one or more"** cameras to fail to feed into the display screen when the vehicle is shifted into reverse, resulting in the screen displaying a **"blue screen."**  The recall notice warned that **"[t]he loss of the rear camera image during a reverse action increases the risk of crash."**  See Attachment A, 11/20/21 Memorandum from Ford to Dealers regarding Safety Recall 21S44.

46.     Ford's proposed "fix" for the Defective Cameras in the Affected Vehicles was a software update to the image processing module B ("IPMB").  Owners and lessees were instructed to bring their Affected Vehicles to an authorized Ford dealership for the software update to be performed.  See id.

47.     On November 10, 2021, Ford announced an **"issue"** with the software update used with Safety Recall 21S44, as problems with the Defective Cameras in the Affected Vehicles persisted even after the update.  Consequently, Ford made **"corrections"** to the update and specified that **"certain vehicles that had 21S44 completed will need to be reprogramed again."**  See id.

48.    In or around March 2022, Ford opened a second formal investigation regarding the Defective Cameras, as it had received multiple reports that the Defective Cameras continued to display a blue or blank screen even after the "corrected" software update, as well as in Affected Vehicles that had been manufactured and sold or leased after the first recall.  See Attachment E, 1/23/23 Chronology regarding FSA 23S02.

49.    By November 30, 2022, Ford had received 2,115 warranty claims related to the Defective Camera issue in Affected Vehicles with the updated software.  See id.

50.    By January 5, 2023, Ford was aware of 17 reported crashes involving the Affected Vehicles that were caused by the malfunctioning Defective Cameras.  See id.

51.    On January 23, 2023, Ford issued its second of three recalls regarding the Defective Cameras.  NHTSA Safety Recall 23V-022 (Manufacturer Recall 23S02) covered 382,759 Affected Vehicles with 360-Degree Camera systems, including 279,700 2020-2023 Ford Explorers; 72,699 2020-2023 Lincoln Aviators; and 30,360 2020-2022 Lincoln Corsairs. The second recall concerned the same issue as the first – that the 360-Degree cameras **"may fail to feed"** the display screen when the vehicle is shifted into reverse, resulting in a **"blue image."** See Attachment B, Part 573 Safety Recall Report 23V-022, dated 1/23/23.

52.    The second recall notice acknowledged that **"[o]nce present, the issue will likely reoccur on the same camera(s) intermittently."**  The second recall notice further warned: **"Loss of rear camera image while reversing increases the risk of a crash."**  See id.

53.    Again, Ford's proposed "fix" for the Defective Cameras in the Affected Vehicles was another software update to the IPMB.  Owners and lessees were again instructed to bring their Affected Vehicles to an authorized Ford dealership for the new software update to be performed.  See id.

54.    Less than four months later, on May 12, 2023, Ford issued its third and most recent recall regarding the Defective Cameras.  NHTSA Safety Recall 23V-342 (Manufacturer Recall 23S23) covered 422,201 Affected Vehicles with 360-Degree Camera systems, including 311,451 2020-2023 Ford Explorers; 80,310 2020-2023 Lincoln Aviators; and 30,434 2020-2022 Lincoln Corsairs.  The third recall concerned the same issue as the first two – that the 360-Degree Cameras fail when the Affected Vehicles are placed in reverse, resulting in a blue, black, or blank screen.  See Attachment C, Part 573 Safety Recall Report 23V-342, dated 5/12/23.

55.    Unlike its first two recalls, Ford's third recall of the Affected Vehicles for the Defective Screen issue does not propose any "fix" for the defect.  Rather, it merely states, **"The root cause for the loss of video frames is still unknown and under investigation."**  Id. (further stating, **"The remedy is under development.  Root cause is unknown."**).

56.    The recall further provides: "**When a remedy is available, owners will be notified by mail and instructed to take their vehicle to a Ford or Lincoln dealer to have the remedy performed on their vehicle.**"  Id.

57.    Ford's third recall notice again warns that the **"[l]oss of rear camera image while reversing increases the risk of a crash."**  Id.  Despite this warning, however, Ford fails to provide any remedy for its Defective Cameras in the Affected Vehicles, and has yet to do so.

58.    In a recent communication to Plaintiff and the class, Ford acknowledged that:

- **"[A] defect which relates to motor vehicle safety exists"** in the Affected Vehicles belonging to Plaintiff and the class;

- Even after the software update provided by its first two recalls, **"it may still be possible to intermittently experience a rear camera blue image on the SYNC screen when the vehicle is placed in reverse"**;

- **"Once present, the issue is likely to reoccur on subsequent key cycles"**;

- Ford **"is working on a service fix"** (i.e., no fix is yet available); and

- **"The loss of the rear camera image during a reverse action increases the risk of a crash."**

See Attachment F, 4/23 Correspondence from Defendant to Plaintiff regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

59. Despite the foregoing, Ford has still not provided any fix for the Defective Cameras in the Affected Vehicles, nor has it indicated when any such fix might be forthcoming.

60. Until a fix becomes available, Ford has informed Plaintiff and the class that the reverse image **"may"** be restored by shifting the vehicle into park, shutting off the vehicle, restarting, and shifting back into reverse. Id. But such a cumbersome process is not always possible, and indeed may increase the risk of crash or injury, for example, if the car is being backed into a busy street or through a heavily-trafficked pedestrian area.

61. Notably, Ford has not instructed Plaintiff and the class to stop driving their Affected Vehicles, even though the Affected Vehicles – all of which are 3 years old or less and remain covered under Ford's New Vehicle Limited Warranty – currently do not comply with the federal requirement of a rear-view camera, and even though Ford has repeatedly warned that the lack of a rear camera image **"increases the risk of a crash."** See id.

62. Consequently, Plaintiff and the class are forced to continue to drive their new or newer Affected Vehicles without this crucial, federally-mandated safety feature, placing themselves, their passengers, pedestrians, and other drivers and passengers at risk of crash, physical injury, and/or death.

63. Ford designed, manufactured, advertised, marketed, and sold or leased the Affected Vehicles to Plaintiff and the class with the Defective Cameras, and moreover failed to disclose the existence of the Defective Cameras to Plaintiff and the class, despite knowing that the defects complained-of herein existed.

13

64.     Moreover, despite being legally responsible for repairing or replacing the Defective Cameras, both under the law and under its own New Vehicle Limited Warranty that it issued for the Affected Vehicles, Ford has neglected to repair or replace the Defective Cameras or even to develop a fix for the Defective Cameras, even though Plaintiff and the class paid a premium for this upgraded option and have sought repair on numerous occasions.

65.     What happened to Plaintiff Michael Burke helps illustrate Ford's unlawful conduct.

66.     Plaintiff is an owner of two Affected Vehicles.

67.     In February 2020, Plaintiff purchased a new 2020 Lincoln Corsair from West Herr Lincoln, an authorized Lincoln dealer located at 2601 Millersport Highway, Getzville, New York 14068.

68.     Then in June 2020, Plaintiff purchased a new 2020 Lincoln Aviator from Bidleman Ford, an authorized Ford and Lincoln dealer located at 305 Grant Avenue, Auburn, New York 13021.

69.     Each of Plaintiff's Affected Vehicles is equipped with a 360-Degree Camera.

70.     Prior to purchasing the Affected Vehicles, Plaintiff researched the vehicles online and at Defendant's authorized dealerships, test drove each vehicle, and spoke with several sales representatives about the vehicles and their features, including the 360-Degree Camera systems. Neither Ford's marketing materials nor the sales representatives mentioned or disclosed the Defective Cameras in the Affected Vehicles to Plaintiff, despite the fact that Defendant was aware of numerous warranty claims relating to the Defective Cameras prior to Plaintiff's purchases.

71.    The 360-Degree Camera system was a primary basis for Plaintiff's decision to purchase each of his Affected Vehicles.  Safety was, and continues to be, a priority in Plaintiff's choice of vehicles.  Plaintiff specifically sought out a vehicle with a rear-view camera system, and he would not have purchased – or even considered purchasing – either of his Affected Vehicles if it did not have a functioning rear-view camera system.  Nor would Plaintiff have purchased either of his Affected Vehicles had he known or been informed by Defendant that that the vehicle's 360-Degree Camera was defective and/or frequently malfunctioned.

72.    Plaintiff first experienced the complained-of defect – the failure of the 360-Degree Camera system – in each of his Affected Vehicles within a year after purchasing said vehicles.  With respect to each Affected Vehicle, Plaintiff shifted the vehicle into reverse and the screen immediately turned blue, with no rear-view image present on the display screen.  See **Figure 1**, supra.

73.    Plaintiff sought repair of the Defective Camera at his local authorized dealership, but he was informed by the dealership that it was unable to repair the Defective Camera.

74.    The Defective Cameras in both of Plaintiff's Affected Vehicles continue to malfunction to this day, consistently showing only a blue image instead of the actual rear-view image.  See **Figure 1**, supra (recent photograph of the Defective Camera in Plaintiff's 2020 Lincoln Aviator displaying a blue screen instead of the actual rear-view image).

75.    Indeed, the Defective Camera in Plaintiff's 2020 Lincoln Aviator malfunctions nearly every time he drives the vehicle, nearly always displaying a blue image instead of the actual rear-view image when Plaintiff shifts the vehicle into reverse.  See **Figure 1**, supra.  The Defective Camera in Plaintiff's 2020 Lincoln Corsair also malfunctions on a routine basis, similarly displaying a blue image instead of the actual rear-view image.

76.     Plaintiff has received multiple recall notices regarding the Defective Cameras in his Affected Vehicles, and he has sought repair of the defect at his local authorized dealership. Defendant and its authorized dealership have failed to repair the Defective Cameras in Plaintiff's Affected Vehicles, however.

77.     Most recently, Plaintiff was told that a fix should be ready by August 2023, but to date the Defective Cameras in Plaintiff's Affected Vehicles still have not been repaired. Indeed, when Plaintiff recently took his Affected Vehicle to his local authorized dealership, he was told that the dealership could not repair the vehicle, and so Plaintiff was forced to continue to drive the Affected Vehicle with the Defective Camera.

78.     Each of Plaintiff's Affected Vehicles is less than 3 years old, and both remain under factory warranty. The complained-of defect in the 360-Degree Cameras in each of Plaintiff's Affected Vehicles has been present for nearly the entire time Plaintiff has owned the Affected Vehicles.

79.     Due to safety concerns caused by the malfunctioning Defective Cameras, Plaintiff and his family are frequently apprehensive about driving the Affected Vehicles.

80.     Nevertheless, Plaintiff and his family are forced to drive the Affected Vehicles with the Defective Cameras. When driving the vehicle, Plaintiff is constantly concerned that the Defective Camera will malfunction, causing him to crash the vehicle and injure himself or others while driving the vehicle in reverse as a result of the Defective Camera.

81.     What happened to Plaintiff was not an accident or an isolated incident.

82.     Rather, it was the result of unlawful actions by Defendant Ford, in which Ford: defectively designed, manufactured, and installed the Defective Cameras in the Affected Vehicles; falsely and deceptively marketed, advertised, and sold or leased the Affected Vehicles

with the Defective Cameras to Plaintiff and the class; failed to disclose the existence of the Defective Cameras to Plaintiff and the class before or at the time they purchased the Affected Vehicles; and failed to repair or replace the Defective Cameras.

83. Ford knew or should have known about the Defective Cameras long before it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiff and the class.

84. Moreover, Ford should have informed Plaintiff and the class about the Defective Cameras before or at the time it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiff and the class.

85. Had Plaintiff and the class known that the Affected Vehicles were equipped with Defective Cameras, they would not have purchased or leased said vehicles, would not have paid as much as they paid for the Affected Vehicles, and/or would have purchased vehicles with the cheaper, standard rear-view camera.

86. Indeed, Plaintiff and the class would have been far better off with the standard rear-view camera, which cost far less than the Defective Cameras and, by all accounts, functions consistently and does not suffer from any intrinsic defect.

87. Ford has a current and ongoing responsibility to repair or replace the Defective Cameras in the Affected Vehicles, both under the law and under its New Vehicle Limited Warranty.

88. Plaintiff and the class have requested that Ford repair or replace the Defective Cameras in their Affected Vehicles.

89. Despite this, Ford has thus far failed, and continues to fail, to comply with its legal and contractual obligations to repair or replace the Defective Cameras.

90.     Indeed, it is unclear when or if such repair or replacement will be forthcoming, as Ford claims that it is still **"working on a service fix."**  See Attachment F, 4/23 Correspondence from Defendant to Plaintiff regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

91.     Further, despite having been told that an interim fix would be available in August 2023, the Defective Cameras in Plaintiff's Affected Vehicles still have not been repaired or replaced.  Moreover, Ford still has not provided any anticipated date on which a permanent fix for the Defective Cameras will be available.

92.     Due to Ford's continued failure to satisfy its obligation to repair or replace the Defective Cameras in the Affected Vehicles, Plaintiff and the class are forced to continue to drive their new or newer Affected Vehicles without a federally-mandated rearview camera, placing themselves, their passengers, pedestrians, and other drivers and passengers at an increased risk of crash, property damage, personal injury, and/or death.

93.     At bottom, Ford designed and manufactured a defective product and knowingly sold that defective product to Plaintiff and the class, without disclosing such defect, and now refuses to provide any remedy, repair, replacement, or restitution for its actions.

94.     As a result of Ford's unlawful conduct, Plaintiff and the class have suffered damages and harm as set forth herein, including but not limited to the loss of value and use of their Affected Vehicles and consequential damages.

95.     Defendant's conduct alleged herein is a deceptive business practice and constitutes false advertising and therefore is barred by New York General Business Law §§ 349 and 350; constitutes a breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., breach of warranty, breach of contract, and a breach of the duty of good faith and fair dealing

that is part of the contract for the sale of items between Defendant and each of its customers;

and, alternatively, constitutes unjust enrichment.

**CLASS ALLEGATIONS**

96.    Plaintiff brings this lawsuit as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2), and (b)(3).

97.    Plaintiff seeks certification of the following nationwide class:

> **All persons in the United States who, within the applicable limitations period, purchased or leased one or more of the following vehicles equipped with a 360-Degree Camera system: a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair (the "Affected Vehicles").**

98.    Plaintiff also seeks certification of the following New York state subclass:

> **All citizens of New York who, within the applicable limitations period, purchased or leased one or more of the following vehicles equipped with a 360-Degree Camera system: a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair (the "Affected Vehicles").**

99.    This Court should apply the discovery rule to extend any applicable limitations

period (and the corresponding class periods) to cover all sales of the Affected Vehicles. The

camera defects were known to Defendant, but were non-obvious to and intentionally concealed

from Plaintiff and the classes. As a result of Defendant's intentional misconduct, omissions, and

affirmative misrepresentations in the marketing, advertising, and sale or lease of the Affected

Vehicles, neither Plaintiff nor the class members could have, through the use of reasonable

diligence, learned of the Defective Cameras or the accrual of their claims against Defendant at an

earlier time.

100.    Specifically excluded from the proposed classes are Defendant and any entities in

which Defendant has a controlling interest, Defendant's agents and employees, the bench

officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

101.    **Numerosity.**  The members of each class are so numerous that joinder of all class members would be impracticable.  While Plaintiff does not know the exact number of class members prior to discovery, upon information and belief, there are over 400,000 members in the proposed nationwide class and at least 5,000 members in the proposed New York state subclass. The exact number and identities of class members are contained in Defendant's records and can be easily ascertained from those records.

102.    **Commonality and Predominance.**  All claims in this action arise exclusively from the uniform policies and procedures of Defendant as outlined herein.  This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case.  These common questions predominate over questions affecting individual class members, if any.  These common questions include, but are not limited to:

       a.      Whether Defendant's actions alleged herein occurred;

       b.      Whether the 360-Degree Cameras described herein are defective;

       c.      Whether Defendant is required to repair or replace the Defective Cameras;

       d.      Whether Defendant has failed to repair or replace the Defective Cameras;

       e.      Whether Defendant knew about the Defective Cameras when it marketed and advertised the Affected Vehicles to Plaintiff and the class;

       f.      Whether Defendant knew about the Defective Cameras when it sold or leased the Affected Vehicles to Plaintiff and the class;

       g.      Whether Defendant failed to disclose the Defective Cameras to Plaintiff and the Class;

h.     Whether Defendant's conduct violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.;

i.     Whether Defendant's conduct was a deceptive act or practice in the conduct of any business, trade or commerce, in violation of the New York General Business Law § 349;

j.     Whether Defendant's conduct constituted false advertising in the conduct of any business, trade or commerce in violation of New York General Business Law § 349;

k.     Whether Defendant's conduct constituted a breach of contract and/or warranties under New York law;

l.     Whether Defendant's continued failure to repair or replace the Defective Cameras constitutes a continued, ongoing breach of contract and warranty under New York law;

m.     Whether Defendant's conduct constituted a breach of the implied covenant of good faith and fair dealing under New York law;

n.      Whether Plaintiff and the class are entitled to injunctive relief in the form of an order establishing a Court-administered program to provide refunds, repairs, replacement, and/or restitution with respect to the Defective Cameras; and

o.     Whether Defendant was unjustly enriched from its sale and lease of the Affected Vehicles outfitted with Defective Cameras to Plaintiff and class members.

103.    **Typicality.**  Plaintiff, like all class members, purchased or leased one or more of the Affected Vehicles equipped with a defective 360-Degree Camera system:  a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair.  Plaintiff's claims all arise from the same course of conduct by Defendant, are based on the same legal theories, and face the same potential defenses as those of the classes.  Plaintiff's claims are typical of all class members' claims.  Plaintiff is a member of the classes he seeks to represent.  All claims of

Plaintiff and the classes arise from the same course of conduct, policy, and procedures as outlined herein.

104.    **Adequacy**. Plaintiff and his counsel will fairly and adequately protect class members' interests.  Plaintiff seeks the same relief for himself as for every other class member, has no interests antagonistic to class members' interests, and is committed to representing the best interests of the classes.  Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

105.    **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy.  Each class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendant's conduct.  Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.  Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by Defendant.  A single adjudication would create economies of scale and comprehensive supervision by a single judge.  Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial in this case.

106.    By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the class, such that final injunctive relief and/or declaratory relief is appropriate respecting the class as a whole.

107.    Without the proposed class action, Defendant will likely retain the benefits of its wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Written Warranty in Violation of the
### Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

**On Behalf of the Proposed Nationwide Class**

108.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

109.    This Court has supplemental jurisdiction over claims brought under the Magnuson-Moss Warranty Act ("MMWA") through the Class Action Fairness Act.

110.    Plaintiff brings this claim on behalf of the proposed nationwide class.

111.    The Affected Vehicles are consumer products under the MMWA.

112.    Plaintiff and the class members are each consumers who purchased and/or leased the Affected Vehicles and received the Affected Vehicles during the duration of a written warranty period applicable to the Affected Vehicles, Defendant's "New Vehicle Limited Warranty."  Plaintiff and the class are entitled by the terms of the written warranty to enforce against Defendant, the manufacturer of the Affected Vehicles, the obligations of said warranty.

113.    Defendant is a person engaged in the business of making the Affected Vehicles available to Plaintiff and the class by selling and leasing said vehicles via its authorized dealers.

114.    Defendant's authorized dealers are agents of Defendant authorized to perform repairs on the Affected Vehicles pursuant to Defendant's written warranty.

115.    The MMWA, 15 U.S.C. § 2301, et seq. is applicable to the claims of Plaintiff and the class in that the Affected Vehicles were manufactured, sold and purchased after July 4, 1975, and each costs in excess of ten dollars ($10.00).

116.    Plaintiff's and each class member's purchase and/or lease of the Affected Vehicles was accompanied by written factory warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Affected Vehicles, to repair or replace the Affected Vehicles and/or their components, or take other remedial action free of charge to Plaintiff and the class with respect to the Affected Vehicles, in the event that the Affected Vehicles failed to meet the specifications set forth in said undertaking.

117.    Said warranties were the basis of the bargain of the contract between Plaintiff and each class member and Defendant for the sale and/or lease of the Affected Vehicles to Plaintiff and the class by Defendant.

118.    The purchase and/or lease of the Affected Vehicles was induced by, and Plaintiff and the class relied upon, these written warranties.

119.    Plaintiff and the class have met all of their obligations and preconditions as required by the written warranties.  Plaintiff and the class have sought repair or replacement of the Defective Cameras in their Affected Vehicles, but Defendant has failed to repair or replace the Defective Cameras and has otherwise failed to comply with its obligations under its written warranties.

120.    As a direct and proximate result of Defendant's failure to comply with its express written warranties, Plaintiff and the class have suffered damages and, in compliance with 15 U.S.C. §2310(d), are entitled to bring suit to recover such damages and other equitable relief. Specifically, Plaintiff's individual damages exceed $25, and the total amount in controversy in this action exceeds $50,000, exclusive of interest and costs.  Plaintiff and the class seek all relief permitted by law, including but not limited to actual, consequential, compensatory, statutory, and

punitive damages (including loss of value of their Affected Vehicles), attorneys' fees and costs, and all available injunctive and equitable relief.

## COUNT II

### Breach of Implied Warranty in Violation of the
### Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

**On Behalf of the Proposed Nationwide Class**

121.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

122.    This Court has supplemental jurisdiction over claims brought under the Magnuson-Moss Warranty Act ("MMWA") through the Class Action Fairness Act.

123.    Plaintiff brings this claim on behalf of the proposed nationwide class.

124.    The Affected Vehicles purchased by Plaintiff and the class were covered by an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7) running from Defendant, the manufacturer, to the intended consumer, Plaintiff and the class.

125.    Defendant is a supplier of consumer goods and is a person engaged in the business of making consumer products available to Plaintiff and the class, i.e., the Affected Vehicles.

126.    Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to consumers or when, as here, Defendant entered into a contract in writing within ninety (90) days of purchase or lease to perform services relating to the maintenance or repair of a motor vehicle.  Defendant is also prohibited from disclaiming, modifying, or limiting its warranty because it knew or should have known about the Defective Cameras before or at the time it sold the Affected Vehicles to Plaintiff and the class, yet it failed to adequately disclose such defects.

127.    Pursuant to 15 U.S.C. § 2308, the Affected Vehicles and their components were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Affected Vehicles and their components were intended.

128.    The Affected Vehicles and their components were warranted to pass without objection in the trade under the contract description, and were required to conform to the descriptions of said vehicles and components contained in the contracts and labels.

129.    The above-described defects in the Affected Vehicles, specifically the Defective Camera components described herein, render the Affected Vehicles unmerchantable and unfit for the ordinary and essential purpose for which said vehicles and components were intended.

130.    Plaintiff and the class have met all of their obligations and preconditions as required by the implied warranties.  Plaintiff and the class have sought repair or replacement of the Defective Cameras in their Affected Vehicles, but Defendant has failed to repair or replace the Defective Cameras and has otherwise failed to comply with its obligations under its warranties.

131.    As a result of Defendant's breaches of implied warranty described herein, Plaintiff and the Class have suffered and continue to suffer various damages and are entitled to bring suit to recover such damages and available equitable relief.  Specifically, Plaintiff's individual damages exceed $25, and the total amount in controversy in this action exceeds $50,000, exclusive of interest and costs.  Plaintiff and the class seek all relief permitted by law, including but not limited to actual, consequential, compensatory, statutory, and punitive damages (including loss of value of their Affected Vehicles), attorneys' fees and costs, and all available injunctive and equitable relief.

## COUNT III

### Violations of New York General Business Law § 349

### On Behalf of the Proposed New York Subclass

132.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

133.    Plaintiff brings this claim on behalf of the proposed New York subclass.

134.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

135.    Defendant conducted business and trade within the meaning and intendment of New York General Business Law § 349, inter alia, in connection with its retail sale and/or lease of the Affected Vehicles to Plaintiff and the class members by Defendant and its agents.

136.    Plaintiff and class members are each consumers who purchased one or more Affected Vehicles from Defendant for their personal use.

137.    As alleged herein, Defendant has engaged, and continues to engage, in deceptive and misleading acts and practices in violation of the New York General Business Law § 349.

138.    Such conduct is based on, inter alia, affirmative misrepresentations, material nondisclosures, and material omissions of facts known by Defendant, as well as violation of a federal requirement prohibiting the conduct alleged herein.

139.    Specifically, Defendant marketed, advertised, and sold or leased to Plaintiff and each class member one or more Affected Vehicles with a Defective Camera, without disclosing said defect before or at the time of sale.  Moreover, as set forth herein, Defendant touted the benefits of the 360-Degree Camera system in its marketing materials and advertisements, on its website, and through its sales representatives, when the cameras are in fact defective and do not

consistently produce the advertised benefits. Additionally, the defect in the cameras render the Affected Vehicles noncompliant with the federal mandate that all vehicles manufactured since May 2018 be equipped with a rearview camera.

140.    Further, Defendant has failed to repair the Defective Cameras in the Affected Vehicles, and has failed to comply with its own warranty issued for such vehicles.

141.    Defendant's deceptive acts, misrepresentations, and omissions have a tendency to deceive, and in fact deceived, the general public, including Plaintiff and the Class.

142.    Defendant's deceptive acts, misrepresentations, and omissions were and are material, in that they were likely to, and did in fact, mislead reasonable consumers acting reasonably under the circumstances.

143.    Although not required by New York law, Plaintiff and class members reasonably relied on Defendant's material misrepresentations, omissions, and deceptive policies and practices, and would not have purchased or leased the Affected Vehicles from Defendant, or would not have paid as much for the Affected Vehicles, had they known the truth about the Defective Cameras and Defendant's policies and practices related thereto.

144.    Defendant knowingly and willingly committed these deceptive acts and practices for its own profit and for the profit of its shareholders.

145.    As a direct and proximate result of Defendant's deceptive actions, Plaintiff and class members have been harmed and have lost money or property.

146.    Defendant's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiff and the class have sustained from having purchased and/or leased the Affected Vehicles.

147.    Plaintiff and the class reasonably and justifiably expected and relied on Defendant, _inter alia_, to sell and lease vehicles absent of defects, to accurately market and advertise its vehicles and their features, to disclose all defects, to comply with applicable law and its own warranty, to repair any defects as required by law and its manufacturer's warranty, and otherwise to act lawfully. Plaintiff and the class specifically relied on Defendant to disclose in connection with the sale or lease of new vehicles all defects present in such vehicles, and such reliance was reasonable due to Defendant's status as a for-profit retail business enterprise.

148.    As a proximate result of Defendant's conduct described herein, Plaintiff and the class have suffered an ascertainable loss of money and property in an amount to be established at trial. Plaintiff and each class member are also entitled to treble damages up to $1,000 because Defendant willfully and knowingly committed deceptive acts and practices in violation of New York General Business Law § 349. Plaintiff and class members are also entitled to an injunction to halt Defendant's unlawful deceptive practices and to initiate a program to provide repairs, replacement, refunds and/or restitution to Plaintiff and the class. Plaintiff is also entitled to reasonable attorneys' fees from Defendant.

## **COUNT IV**

### **Violations of New York General Business Law § 350**

#### **On Behalf of the Proposed New York Subclass**

149.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

150.    Plaintiff brings this claim on behalf of the proposed New York subclass.

151.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

152.    Defendant's material misrepresentations, omissions, and failures to disclose as described herein also constitute false advertising in violation N.Y. Gen. Bus. Law § 350, which broadly declares unlawful all **"[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."**

153.    Section 350-e allows any person who has been injured by any violation of section 350 or section 350-a to bring an action to recover actual damages or $500, whichever is greater, as well as to obtain an injunction to enjoin the unlawful false advertising. N.Y. Gen. Bus. Law § 350-e(3).

154.    By the acts and omissions alleged herein, including, inter alia, selling and/or leasing the Affected Vehicles to Plaintiff and the class without disclosing the Defective Camera before or at the time of sale, and touting the benefits of the 360-Degree Camera system in its marketing materials and advertisements, on its website, and through its sales representatives, when the Cameras are in fact defective and do not consistently produce the advertised benefits, Defendant has directly violated New York General Business Law § 350, causing damage to Plaintiff and the class.

155.    By reason of this conduct, Defendant has engaged in false advertising in violation of the New York General Business Law § 350.

156.    Defendant's false advertising has a tendency to deceive, and in fact deceived, the general public, including Plaintiff and the class.

157.    Defendant's false advertising is and was material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

158.    Although not required by New York law, Plaintiff and class members reasonably relied on Defendant's false advertising, and would not have purchased or leased the Affected Vehicles from Defendant, or would not have paid as much for said vehicles, had they known the truth about Defective Cameras and Defendant's policies and practices related thereto, and specifically had they known that Defendant's marketing materials and advertisements were false.

159.    Defendant knowingly and willingly made these false advertisements and misrepresentations for its own profit and for the profit of its shareholders.

160.    As a direct and proximate result of Defendant's false advertising, Plaintiff and class members have been harmed and have lost money or property.

161.    Defendant's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiff and the class have sustained from having purchased and/or leased the Affected Vehicles.

162.    Plaintiff and the class reasonably and justifiably expected and relied on Defendant, inter alia, to sell and lease vehicles absent of defects, to accurately market and advertise its vehicles and their features, to disclose all defects, to comply with applicable law and its own warranty, to repair any defects as required by law and its manufacturer's warranty, and otherwise to act lawfully.  Plaintiff and the class specifically relied on Defendant to disclose in connection with the sale or lease of new vehicles all defects present in such vehicles, and such reliance was reasonable due to Defendant's status as a for-profit retail business enterprise.

163.    As a proximate result of Defendant's conduct described herein, Plaintiff and the class have suffered an ascertainable loss of money and property in an amount to be established at trial.  Plaintiff and each class member are also entitled to treble damages up to $1,000 because Defendant willfully and knowingly conducted false advertising in violation of New York

General Business Law § 350.   Plaintiff and class members are also entitled to an injunction to halt Defendant's unlawful false advertising and to initiate a program to provide repairs, replacement, refunds and/or restitution to Plaintiff and the class.  Plaintiff is also entitled to reasonable attorneys' fees from Defendant.

## COUNT V

### Breach of Contract

**On Behalf of the Proposed Nationwide Class and/or the New York Subclass**

164.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

165.    Plaintiff brings this claim on behalf of the proposed nationwide class or, alternatively, the New York subclass.

166.    Plaintiff and the class entered into express contracts with Defendant.

167.    The contracts provided that Defendant would sell or lease a vehicle to Plaintiff and each class member in exchange for a specified monetary amount.

168.    The contracts further provided that the vehicles and their components would be fully operational and free from known defects, and that Defendant would repair any unknown defects that arose, or replace any defective parts, within the warranty period.

169.    Plaintiff and the class paid Defendant for the vehicles they purchased or leased, and satisfied all other conditions of the contracts.

170.    Defendant breached its contracts with Plaintiff and the class members, inter alia, by selling or leasing to Plaintiff and the class vehicles with Defective Cameras, and by failing to repair or replace such Defective Cameras under the applicable warranty.

171.    As a direct and proximate result of Defendant's breach, Plaintiff and the class have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT VI

### Breach of Implied Contract for Violation of the Implied Duty of Good Faith and Fair Dealing

### On Behalf of the Proposed New York Subclass

172.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

173.    Plaintiff brings this claim on behalf of the proposed New York subclass.

174.    There existed an express contract for the sale or lease of merchandise between Defendant and each class member.

175.    By operation of New York law, there also existed an implied duty of good faith and fair dealing in each such contract.

176.    By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

177.    Specifically, it was a violation of the duty of good faith and fair dealing for Defendant, inter alia, to sell or lease the Affected Vehicles to Plaintiff and the class with the Defective Cameras, to fail to disclose the Defective Cameras prior to or at the time of purchase, and to refuse to repair or replace the Defective Cameras under Defendant's warranty or otherwise.

178.    Defendant continues to breach the duty of good faith and fair dealing by refusing to repair or replace the Defective Cameras on the Affected Vehicles of Plaintiff and the class.

179.    As a result of Defendant's breach, Plaintiff and each class member has suffered damages in an amount to be established at trial.

## COUNT VII

### Breach of Express Warranty

#### On Behalf of the Proposed New York Subclass

180.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

181.    Plaintiff brings this claim on behalf of the proposed New York subclass.

182.    Each Affected Vehicle purchased by Plaintiff and the class was accompanied by an express warranty, i.e., Defendant's "New Vehicle Limited Warranty."

183.    As set forth herein, this express warranty requires Defendant, inter alia, to repair or replace any and all defective parts or components on the Affected Vehicles that fail within the coverage period, including the Defective Cameras at issue in this lawsuit.

184.    All conditions precedent to Defendant's liability under this express warranty have been fulfilled by Plaintiff and the class in terms of paying for the goods at issue and providing notice of the Defective Cameras to Defendant, or have been waived.  Defendant has actual and/or constructive notice of the Defective Cameras in the Affected Vehicles, but to date has taken no action to remedy such defects.

185.    By failing to repair or replace the Defective Cameras in the Affected Vehicles, Defendant has breached the terms of its express warranty.

186.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class members have been injured and have suffered actual damages in an amount to be established at trial.

<u>**COUNT VIII**</u>

<u>**Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose**</u>

**On Behalf of the Proposed New York Subclass**

187.    Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

188.    Plaintiff brings this claim on behalf of the proposed New York subclass.

189.    By operation of law, the Affected Vehicles and their component parts, specifically including the Defective Cameras, were covered by the implied warranty of merchantability and fitness for a particular purpose, which means that they must be fit for their ordinary and intended purposes and use.

190.    By the facts alleged herein, Defendant's Defective Cameras are not fit for their ordinary or intended use.

191.    Indeed, the fact that Defendant's Defective Cameras frequently and routinely glitch or malfunction, resulting in the loss of the camera image and a blank, black, or blue screen, render them unable to work or function as intended.

192.    Plaintiff and the class reasonably expected that upgraded, premium camera systems designed, manufactured, installed and/or approved for a use on a new or newer vehicle would not regularly glitch or malfunction.

193.    Defendant has actual and/or constructive notice of the Defective Cameras in the Affected Vehicles, but to date has taken no action to remedy such defects.  Consequently, Defendant has breached the implied warranties of merchantability and fitness for a particular purpose as to the Defective Cameras.

194.     Moreover, Defendant continues to breach the implied warranties of merchantability and fitness for a particular purpose because it refuses to repair or replace its Defective Cameras.

195.     All conditions precedent to Defendant's liability under the implied warranties of merchantability and fitness for a particular purpose have been fulfilled by Plaintiff and the class members or have been waived, in that, inter alia, Plaintiff and the class members have paid for the Defective Cameras, have provided Defendant with notice of the Defective Cameras, and have sought relief from Defendant, but Defendant has failed to repair or replace the Defective Cameras.

196.     As a direct and proximate result of Defendant's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT IX
## Unjust Enrichment/Disgorgement

### On Behalf of the Proposed Nationwide Class and/or the New York Subclass

197.     Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

198.     Plaintiff brings this claim on behalf of the proposed nationwide class or, alternatively, the New York subclass.

199.     This claim is alleged in the alternative to Plaintiff's claims for money damages and breach of contract claims.

200.     By the acts alleged herein, Defendant received a benefit from Plaintiff and the class members, in the form of monies paid to Defendant by Plaintiff and the class members for

the purchase and/or lease of the Affected Vehicles and for the upgraded and optional 360-Degree Cameras.

201.    The retention of that benefit by Defendant would be unjust because, <u>inter alia</u>, Defendant designed, manufactured, and installed Defective Cameras in the Affected Vehicles; marketed, advertised, and sold or leased such vehicles containing the Defective Cameras to Plaintiff and the class; and failed to disclose the existence of the Defective Cameras to Plaintiff and the class until long after the sales and/or lease of the Affected Vehicles.

202.    By the facts alleged herein, equity demands that Defendant disgorges itself of this benefit and that the benefit be returned to Plaintiff and the class.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff Michael Burke, on behalf of himself and the proposed classes, respectfully asks this Court to:

A.    Certify the case as a class action and appoint Plaintiff and his counsel to represent the classes;

B.    Declare that Defendant's conduct alleged herein violate federal law, New York law, common law, and principles of equity as set forth herein;

C.    Enter an order for injunctive relief against Defendant, establishing, under the Court's equitable powers and at Defendant's expense, a Court-administered program under which Defendant must repair or replace the Defective Cameras on the Affected Vehicles of Plaintiff and the class;

D.    Retain jurisdiction to monitor Defendant's compliance with the injunctive relief;

E.     Order that the discovery rule applies to extend any applicable limitations periods (and the corresponding class periods) for the classes to include all sales and leases of Affected Vehicles;

F.     Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiff and class members as a result of the unlawful conduct alleged herein;

G.     Enter judgment in favor of Plaintiff and the classes for damages suffered as a result of the conduct alleged herein;

H.     Order Defendant to pay punitive, exemplary, treble, and/or statutory damages to the class under the laws outlined herein;

I.     Order Defendant to pay attorneys' fees and costs to the extent allowed by law;

J.     Order Defendant to pay pre-judgment and post-judgment interest to the extent allowed by law; and

K.     Grant such other and further legal and equitable relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

PLEASE TAKE NOTICE that the Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  December 1, 2023              By: _____
                                          DeNITTIS OSEFCHEN PRINCE, P.C.
                                          Stephen P. DeNittis, Esq.
                                          315 Madison Avenue, 3rd Floor
                                          New York, NY 10017
                                          Telephone: (646) 979-3642
                                          Facsimile: (856) 797-9978
                                          Email: sdenittis@denittislaw.com

CRIDEN & LOVE, P.A.
Michael E. Criden, Esq. *
Lindsey C. Grossman, Esq. *
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
Email: mcriden@cridenlove.com
Email: lgrossman@cridenlove.com
* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiff and the Proposed Classes*